UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALVE CORPORATION,

        Petitioner,

      v.

CHRISTIAN GRABER,

        Respondent.

No.

**PETITION TO VACATE ARBITRATION AWARDS**

**NOTING DATE: OCTOBER 1, 2025**

PETITION

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...............................................................................................................1

THE PARTIES..................................................................................................................1

JURISDICTION AND VENUE ........................................................................................1

ARGUMENT....................................................................................................................2

I.    THE COURT SHOULD VACATE THE AWARDS BECAUSE THE PARTIES DID NOT AGREE TO ARBITRATE ................................................................................2

    A.    RESPONDENT AGREED TO THE CONTROLLING SSA ............................2

    B.    VALVE SOUGHT TO ENJOIN THE ARBITRATION AND OBJECTED TO THE ARBITRATION.........................................................................................4

    C.    UNDER THE CONTROLLING SSA, THERE IS NO AGREEMENT TO ARBITRATE ...................................................................................................4

II.    THE AWARDS VIOLATED DUE PROCESS....................................................................5

    A.    THE ARBITRATOR BASED THE AWARDS ON EX PARTE EVIDENCE VALVE DID NOT HAVE AN OPPORTUNITY TO REVIEW OR ADDRESS ..............5

    B.    THE ARBITRATOR DEPRIVED VALVE OF THE OPPORTUNITY TO CROSS-EXAMINE RESPONDENT ...................................................................7

III.    THE AWARDS WERE ARBITRARY AND IRRATIONAL .......................................................8

IV.    THE ARBITRATOR FAILED TO DISCLOSE SIGNIFICANT CONFLICTS..........................9

CONCLUSION.............................................................................................................10

PETITION - i

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## INTRODUCTION

1.    Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, Petitioner Valve Corporation requests that this Court vacate interim and final arbitration awards (the "Awards") by Arbitrator Frances Floriano Goins (the "Arbitrator") in *Graber v. Valve Corp. DBA* Steam, AAA Case No. 01-23-0005-3702 (the "Arbitration").[1]

2.    The Arbitrator held an arbitral hearing even though the parties had no agreement to arbitrate. The Arbitrator then issued the Awards notwithstanding that the Awards are based on secret evidence submitted *ex parte* in violation of Valve's due process rights, after a hearing in which Valve was denied the opportunity to cross-examine the Respondent—obviously a crucial witness. The Arbitrator also had undisclosed conflicts of interest. Because the Arbitrator had no jurisdiction to conduct an arbitration, deprived Valve of a fundamentally fair hearing, and created a reasonable impression of bias, the Awards should be vacated.

## THE PARTIES

3.    Petitioner Valve is a Washington corporation with its principal place of business in King County, Washington. Valve offers an online platform called Steam, where consumers can purchase, play, and interact about video games.

4.    Respondent Christian Graber is an individual and resident of Medina, Ohio. Respondent alleges he is a Steam user.

## JURISDICTION AND VENUE

5.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because the aggregate amount in controversy exceeds $75,000 exclusive of interest and costs and Valve and Respondent are citizens of different states.

6.    Venue is proper pursuant to the forum selection clause set forth in Section 10 of the

---

[1] The Arbitrator entered substantively identical awards in all four arbitrations before her. Valve is filing Petitions seeking to vacate all awards entered for the four individuals before the Arbitrator.

PETITION - 1

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

agreement between the parties. (Ex. B § 10.)[2]

7.      This Court has personal jurisdiction over Respondent pursuant to Section 10 of the agreement between the parties. (Ex. B § 10.)

**ARGUMENT**

**I.      The Court Should Vacate the Awards Because the Parties Did Not Agree to Arbitrate[3]**

8.      The FAA provides that a court "may make an order vacating the award . . . where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). An arbitrator exceeds her powers by issuing an award when the parties have no agreement to arbitrate. *Bozek v. PNC Bank*, 2020 WL 6581491, at *5 (E.D. Pa. Nov. 10, 2020), *aff'd* 2021 WL 4240359 (3d Cir. Sept. 17, 2021); *see also Morgan Keegan & Co. v. McPoland*, 829 F. Supp. 2d 1031, 1036 (W.D. Wash. 2011).

9.      Here, before the Arbitrator set this matter for hearing, Respondent agreed to the Controlling SSA, described below. The Controlling SSA removed the parties' arbitration agreement and required resolution of all claims and disputes, including pending disputes, in court. Upon Respondent's agreement to the Controlling SSA, the Arbitrator had no authority to continue with the Arbitration or issue the Awards. Accordingly, the Awards must be vacated. *Transcon. Gas Pipe Line Co. v. Permanent Easement for 2.59 Acres*, 2019 WL 6481528, at *2 (M.D. Pa. Oct. 8, 2019), *aff'd* 834 F. App'x 752 (2020); *see also Coinbase, Inc. v. Suski*, 602 U.S. 143, 145 (2024) ("[D]isputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes.").

**A.      Respondent Agreed to the Controlling SSA**

10.      Valve and Respondent had an arbitration agreement in October 2023 when Respondent filed his arbitration demand against Valve. That arbitration agreement was part of the Steam Subscriber Agreement ("SSA") that went into effect on April 25, 2023 (the "Superseded SSA"). (Ex. A.) Subsequently, on September 26, 2024, Valve removed the arbitration provision and the class action waiver

---

[2] All references to "Ex." followed by a numbered exhibit refer to exhibits filed in connection with the Declaration of Blake Marks-Dias, dated September 8, 2025 ("Marks-Dias Decl."). All references to "Ex." followed by a lettered exhibit refer to exhibits filed in connection with the Declaration of Scott Lynch, dated September 8, 2025 ("Lynch Decl.").

[3] This issue is before this Court in *Valve Corp. v. Abbruzzese*, No. 2:24-cv-01717-JNW (W.D. Wash. filed Oct. 18, 2024). Discussion of other issues particular to this individual begins below, Part II.

PETITION - 2

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

from the SSA. The current SSA (the "Controlling SSA") now provides for resolution of disputes in court, including pending disputes. (Ex. B § 10.) It also includes a merger clause providing that it supersedes and replaces the parties' prior agreement. (*Id.* § 11.)

11. Beginning on September 26, 2024, Valve provided conspicuous notice of the Controlling SSA to Respondent, including by email and through a pop-up that appeared when users logged into the Steam client or website. (Lynch Decl. ¶¶ 7-19.) For online transactions, "mutual assent" to transaction terms "'turns on whether the consumer had reasonable notice of the terms of service agreement.'" *Grant v. T-Mobile USA, Inc.*, 2024 WL 3510937, at *3 (W.D. Wash. July 23, 2024) (citation omitted). For notice to be "reasonably conspicuous," it must be displayed in a "'font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it.'" *Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1195 (W.D. Wash. Nov. 21, 2024) (citation modified); *accord Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024). The notice that Valve provided was conspicuous and consistent with the modification requirements in the Superseded SSA. (Lynch Decl. ¶¶ 7-19; Ex. A § 8(A).)

12. Respondent assented to the Controlling SSA through continued use of Steam and by affirmatively clicking a button to accept the new terms.

13. Users manifest assent if they continue to use a service after receiving notice of updated terms. *See, e.g.*, *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 289-90 (S.D.N.Y. 2025) (claimant assented where he "continued to subscribe to and use [service]" after receiving notice of updated agreement); *Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at *12 (N.D. Cal. July 31, 2023) ("[E]mails followed by continued use is sufficient to establish assent."); *Dlugolecki v. PeopleConnect, Inc.*, 2020 WL 13587803, at *2 (C.D. Cal. Nov. 9, 2020) (finding users manifested assent by continuing to use an online service where they received email notice that "continued use" would "constitute your acceptance of all changes"); *West v. Uber Techs.*, 2018 WL 5848903, at *5 (C.D. Cal. Sept. 5, 2018) ("Courts have found that when consumers receive emails such as this one, continued use of the service or product constitutes assent to the updated terms."). Respondent is bound by the Controlling SSA pursuant to the

PETITION - 3

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

email and pop-up notices provided to him because he did not delete or discontinue use of his Steam account by November 1, 2024. (Lynch Decl. ¶¶ 28-29 .) To the contrary, Respondent logged into Steam on November 14, 2024, and more than 180 times between that date and May 18, 2025. (*Id.* ¶ 30.)

14. In addition, users manifest assent if they click a button to indicate acceptance of terms. *Saeedy*, F. Supp. 3d at 1196-97; *accord Oberstein v. Live Nation Ent., Inc.,* 60 F.4th 505, 516 (9th Cir. 2023). On May 18, 2025, Respondent affirmatively accepted the Controlling SSA when making a purchase on Steam by checking the box next to "I agree to the terms of the Steam Subscriber Agreement (last updated Sept 26, 2024)" and clicking the "Purchase" button. (Lynch Decl. ¶ 31.)

**B. Valve Sought to Enjoin the Arbitration and Objected to the Arbitration**

15. Because the Controlling SSA removed the parties' arbitration agreement, on October 18, 2024, Valve commenced an action in this Court to enjoin 624 recently-commenced arbitrations, including Respondent's. *See Valve Corp. v. Abbruzzese*, No. 2:24-cv-1717 (W.D. Wash. filed Oct. 18, 2024). Valve also promptly notified the Arbitrator and requested that the Arbitrator stay Respondent's Arbitration pending resolution of the *Abbruzzese* action. (Ex. 5.)

16. On October 24, 2024, the Arbitrator denied Valve's motion to stay the Arbitration. (Ex. 6.) Valve defended itself in further proceedings under a full reservation of rights. (*See* Ex. 7.) The Arbitrator held merits hearings on Respondent's claims over Valve's objections. (Marks-Dias Decl. ¶ 11.) The Arbitrator issued the Interim Award on May 29, 2025, and the Final Award on September 8, 2025.

**C. Under the Controlling SSA, There Is No Agreement To Arbitrate**

17. Under the Controlling SSA, the parties had no agreement to arbitrate. A dispute resolution provision in an updated agreement is enforceable with respect to already-asserted claims when the provision provides for retroactive effect. *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1127 (11th Cir. 2014).[4] Here, Respondent agreed that the Controlling SSA would replace and supersede his prior agreement

---

[4] *Accord Pilon,* 769 F. Supp. 3d 273, 289-90; *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 2021 WL 2350814, at *4 (C.D. Cal. Apr. 20, 2021); *Laster v. T-Mobile USA, Inc.*, 2008 WL 5216255, at *6 (S.D. Cal. Aug. 11, 2008); *Enderlin v. XM Satellite Radio Holdings, Inc.*, 2008 WL 830262, at *7 (E.D. Ark. Mar. 25, 2008); *Goetsch v. Shell Oil Co.*, 197 F.R.D. 574, 577 (W.D.N.C. 2000); *McCumbee v. M Pizza, Inc.*, 2023 WL 2725991, at *10 (N.D. W. Va. Mar. 30, 2023).

PETITION - 4

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

to arbitrate and apply retroactively to his claim. (Ex. B §§ 10-11; Lynch Decl. ¶¶ 28-31.)

18.     Therefore, at the time of the arbitral hearing (and well beforehand), the parties had no agreement to arbitrate and the Arbitrator had no authority to issue the Awards. Those Awards should hence be vacated.

## II.     The Awards Violated Due Process

19.     The Arbitrator's Awards, including her substantial attorney's fee award, should also be vacated because the proceedings deprived Valve of due process. A court may vacate an award when the arbitrator "refuse[s] to hear evidence pertinent and material to the controversy; or [because] of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). "In determining whether an arbitrator's misbehavior or misconduct prejudiced the rights of the parties, [the court asks] whether the parties received a fundamentally fair hearing." *Move, Inc. v. Citigroup Glob. Mkts., Inc.*, 840 F.3d 1152, 1158 (9th Cir. 2016); *see also Costco Wholesale Corp. v. Int'l B'hood of Teamsters, Loc. No. 542*, 850 F. App'x 467, 468 (9th Cir. 2021) ("[A]n arbitration award may be vacated if the proceedings violate the rule of fundamental fairness"). To be fundamentally fair, an arbitration must provide due process—i.e., meet the "minimal requirements of fairness—adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator." *Moonshadow Mobile, Inc. v. Labels & Lists, Inc.*, 2024 WL 5056906, at *6 (D. Or. Dec. 9, 2024) (citation omitted).

### A.     The Arbitrator Based the Awards on Ex Parte Evidence Valve Did Not Have an Opportunity to Review or Address

20.     An arbitration is fundamentally unfair when the arbitrator receives evidence *ex parte* but does not provide the other party an opportunity to review or respond to that evidence. *See, e.g.*, *Move*, 840 F.3d at 1158 ("[V]acatur may be proper under § 10(a)(3) where an arbitrator's ex parte receipt of evidence affected the outcome of the proceedings."); *accord Totem Marine Tug & Barge, Inc. v. N. Am. Towing, Inc.,* 607 F.2d 649, 653 (5th Cir. 1979). *Ex parte* receipt of evidence also violates AAA Rules. *See* AAA Consumer Rule R-32(a); *Totem*, 607 F.2d at 653 (vacating award when arbitrator violated AAA rule against *ex parte* receipt of evidence).

21.     When fees are awarded, "[d]ue process requires that [an adversary] be given an opportunity

PETITION - 5

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

to examine . . . timesheets so that it has the information it needs to oppose recovery for unnecessary work." *QC Mfg., Inc. v. Solatube Int'l, Inc.*, 2022 WL 22879571, at *8 (C.D. Cal. Jan. 18, 2022); *see also Yamada v. Nobel Biocare Holding AG,* 825 F.3d 536, 544 (9th Cir. 2016) ("[T]he district court's use over Defendants' objection of *ex parte*, in camera submissions to support its fee order violated Defendants' due process rights."); *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 1072097, at *3 (N.D. Cal. Mar. 17, 2016) (holding that "due process requires filing billing records on the docket so that opposing parties can examine all materials on which the court relied" (collecting cases)).

22.    The Awards include an attorney's fee award of $732,426.52 on top of $243.23 in damages awarded to Respondent, which was trebled to $729.69 (in addition to prejudgment interest). (Exs. 8-9.) Before the Arbitrator made that attorney's fee award, Valve requested to review Respondents' timesheets and billing records so that it could meaningfully respond to Respondent's counsel's request for a fee award of over $2.8 million, reflecting more than 2,600 hours of attorney time spanning multiple months. Rather than permit Valve to review these materials, the Arbitrator ordered Respondent to submit them *in camera*. (Ex. 12.) Valve received only a one-page summary spreadsheet listing attorneys, total hours, proposed rates, and proposed total fees. (Ex. 13 (Fee Table).)

23.    With no ability to review the detailed information that Respondent submitted to the Arbitrator, Valve had no meaningful opportunity to challenge Respondent's claimed costs and fees. The Awards were thus based entirely on secret evidence shared only between Respondent and the Arbitrator in violation of both due process and AAA Rules. *See Totem,* 607 F.2d at 653 (vacating arbitral award derived from evidence arbitrator received *ex parte*).

24.    In addition, the Awards included fees Respondent's counsel incurred in representing other individuals. The Superseded SSA permitted the Arbitrator to award relief "only to the extent of that party's individual claim," not for any other matters. (Ex. A § 11(D).) If "the arbitrator goes beyond that self-limiting agreement between consenting parties, it acts inherently without power, and an award ordered under such circumstances must be vacated." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 140 (2d Cir. 2007). Courts similarly hold that fee awards cannot include work on other matters.

PETITION - 6

*See Magill v. DIRECTV, LLC*, 2017 WL 8894320 at *3 (C.D. Cal. June 23, 2017) (rejecting the claim that "work done on behalf of several different plaintiffs with individual lawsuits, some indisputably unsuccessful, can be fully recovered through the victory of one such lawsuit"); *see also Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 631 (6th Cir. 2013) (awarding fees for work on other cases would create "all sorts of oddities, as illustrated by this case where counsel would be permitted to recover fees for thousands of hours of time spent litigating a case they *lost*").

25.     Here, Respondent's counsel sought and obtained as part of the fee award substantial fees for work "undertake[n] for any and all arbitrations," including "thousands" of other arbitrations that Respondent's counsel filed against Valve. (Ex. 13; *see also* Ex. 10 at 1, 16; Ex. 13 (Fee Table); Ex. 16, Decl. at 1 (Fee Chart); Ex. 9 at 3.) Valve could not challenge the particulars of what Respondent claimed. Had Valve been given that information, it could have cross-checked it against its own records of the other arbitrations that Respondent's counsel is concurrently prosecuting against Valve, including hearings that resulted in 25 awards in Valve's favor (and thus did not result in a fee award for work done by Respondent's counsel). (Marks-Dias Decl. ¶ 22.) The Awards are thus doubly subject to vacatur because the due process violation resulted in substantial fees in this Arbitration for work done in connection with other arbitrations in violation of both the Superseded SSA and governing law.

26.     The Arbitrator also violated Valve's due process rights by ordering Respondent's counsel to submit "additional information" in furtherance of Respondent's fee request without permitting Valve an opportunity to respond. (Ex. 15.) Specifically, the Arbitrator requested information pertaining to other arbitrations Respondents' counsel had filed against Valve, a breakdown of attorneys' fees and costs attributable only to the four arbitrations before the Arbitrator, and billing rates for "comparable attorneys." (*Id.*) The Arbitrator never ordered Respondent to provide Valve with the underlying time entries or narratives, making it impossible for Valve to challenge the amounts Respondent sought and obtained in full.

**B.      The Arbitrator Deprived Valve of the Opportunity to Cross-Examine Respondent**

27.     The Arbitrator also deprived Valve of a fundamentally fair hearing because Valve did not

PETITION - 7

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

have the opportunity to cross-examine Respondent, a critical witness. Courts vacate arbitral awards when critical witnesses are excluded. *See In re Watkins-Johnson Co. v. Pub. Utils. Auditors*, 1996 WL 83883, at *4 (N.D. Cal. Feb. 20, 1996) (vacatur ordered when the only evidence the claimant offered "on the most critical issue in the case" was a written statement, which the arbitrator admitted over objection rather than require the witness to appear for cross-examination).

28.     An essential element of Respondent's antitrust claims against Valve is that Respondent suffered "antitrust injury." *See, e.g.*, *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999) (requiring proof of antitrust injury to plaintiff).

29.     Respondent bore the burden of proof on this critical issue but offered no evidence on it and was not subject to cross-examination. Respondent did not attend his arbitration hearing, let alone testify. (Marks-Dias Decl. ¶ 23.)

30.     Instead, the Arbitrator incorrectly concluded Claimant proved antitrust injury based solely on the purchase history for a Steam account that Respondent's arbitration demand asserted belonged to Respondent. (Ex. 8 at 3. n.3.)

31.     The Arbitrator did not explain how Valve's production of the purchase history associated with a Steam ID number that was provided by Respondent's counsel, standing alone, established that the purchase history belonged to Respondent. It was undisputed that Valve does not collect a user's name, address or phone number when he or she creates a Steam account. (Lynch Decl. ¶ 3.) The Arbitrator's failure to require Respondent to appear, testify, and be subject to cross-examination, deprived Valve of a fair hearing. The Awards should be vacated. *See, e.g.*, *Costco*, 850 F. App'x at 468-69.

### III.   The Awards Were Arbitrary and Irrational

32.     The Awards should also be vacated in their entirety because they were arbitrary and irrational. Section 10(a)(4) of the FAA provides for vacatur of an award that is "'completely irrational' or exhibits a 'manifest disregard of the law.'" *Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1166 (9th Cir. 2019) (citation omitted). Courts vacate entire arbitration awards where an arbitrator's attorney's fee award is "irrational because it was not supported by any proof" as violative

PETITION - 8

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

of "the strong public policy against excessive fees." *In re Briscoe Protective, LLC v. N. Fork Surgery Ctr., LLC*, 215 A.D.3d 956, 957-58 (N.Y. App. Div. 2023).

33.    The Arbitrator's fee award is both completely irrational and made in manifest disregard of the law. Successful antitrust plaintiffs may seek a "reasonable attorney's fee." 15 U.S.C. § 15(a). A reasonable fee is one that is "adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007) (citation omitted). The amount the Arbitrator awarded far exceeds that amount. Indeed, the arbitrator acknowledged that "[t]he damage award . . . is substantially smaller than the value of the claimed attorneys fees." (Ex. 9 at 2.) The amount the Arbitrator awarded also far exceeds Respondent's counsel's own pre-litigation estimate. (*See* Marks-Dias Decl. ¶ 24; Ex. 14.) The Arbitrator even awarded fees contrary to her own findings. The Arbitrator stated in the Final Award that "I do not find that a [lodestar] multiplier is appropriate here." (Ex. 9 at 2.) Yet the Arbitrator then, contrary to her own findings, applied a 1.5x lodestar multiplier in calculating her fee award. (Ex. 10 at 1, 16; *Id.*, Decl. at 4 (Fee Request); Ex. 9 at 3.)

## IV.    The Arbitrator Failed to Disclose Significant Conflicts

34.    The FAA provides that a court may vacate an arbitration award "where there was evident partiality or corruption in the arbitrator[]." 9 U.S.C. § 10(a)(2). To ensure their impartiality, arbitrators have a duty to investigate and disclose potential conflicts of interest. *New Regency Prods., Inc. v. Nippon Herald Films, Inc.,* 501 F.3d 1101, 1105-06 (9th Cir. 2007). An arbitrator's failure to investigate and "'disclose to the parties any dealings that might create an impression of possible bias' is sufficient to support vacatur." *Id* at 1105 (citation omitted); *see also Monster Energy Co. v. City Beverages, LLC*, 940 F.3d 1130, 1138 (9th Cir. 2019) (failure to disclose business relationship "creates a reasonable impression of bias and supports vacatur of the arbitration award").

35.    The Arbitrator failed to disclose significant conflicts. The Arbitrator is a partner at the law firm UB Greensfelder LLP ("UBG"), where she has worked for over 20 years. (Ex. 18.) UBG represents multiple video game developers or their affiliates who are class members adverse to Valve in a certified federal antitrust class action currently pending in this Court, *In re Valve Antitrust Litig.*, No. 21-cv-00563-

PETITION - 9

JNW (the "Valve Developer Class Action"), or a major Valve competitor. (Marks-Dias Decl. ¶¶ 28-29; Exs. 27-33). UBG's conflict is imputed to the Arbitrator. *See* Ohio Prof. Cond. R. 1.10(a); *Carnegie Cos v. Summit Props., Inc.*, 183 Ohio App. 3d 770 (2009) (disqualifying UBG's predecessor from concurrent representation of clients with adverse interests because conflicts were imputed to all lawyers within the firm); *see also* Wash. R.P.C. 1.10(a).

36.    There is substantial overlap between the Arbitrations and the Valve Developer Class Action. Respondent copied the allegations in the Valve Developer Class Action. (Ex. 1.) In the Awards, the Arbitrator cited the class certification decision in the Valve Developer Class Action. The Arbitrator referred to this Court as "the court that most recently addressed the matter" of whether Valve held a monopoly over the "PC video game digital distribution market"—although the Court did not in fact reach that question (Ex. 8 at 1, 2.)

37.    While the Arbitrator made multiple disclosures of potential conflicts, *none* of those disclosures mentioned UBG's representation of members of the Valve Developer Class and a major Steam competitor. (Exs. 19-26.) Courts vacate awards where arbitrators fail to investigate and disclose conflicts involving the arbitrator's law firm's clients. *See Schmitz v. Zilveti*, 20 F.3d 1043, 1049 (9th Cir. 1994) (arbitrator "had a duty to investigate the conflict at issue" involving his law firm's former legal representation of the parent company of one of the parties); *HSMV Corp. v. ADI Ltd.*, 72 F. Supp. 2d 1122, 1132 (C.D. Cal. 1999) (vacating award where arbitrator's firm represented a party's owner). This Court should do likewise.

## CONCLUSION

38.    For the foregoing reasons, Valve respectfully requests that the Court vacate the Awards.

PETITION - 10

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

DATED this 8th day of September, 2025.

s/ Blake Marks-Dias
Blake Marks-Dias, WSBA No. 28169
Colin M. George, WSBA No. 45131
CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com

Michael W. McTigue Jr., *Pro Hac Vice Forthcoming*
Meredith Slawe, *Pro Hac Vice Forthcoming*
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Attorneys for Petitioner Valve Corporation*

PETITION - 11