HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALVE CORPORATION,

              Petitioner,

      v.

CHRISTIAN GRABER,

              Respondent.

Case No.  2:25-cv-1730-JNW

RESPONDENT CHRISTIAN GRABER'S
RESPONSE TO PETITION TO VACATE
ARBITRATION AWARDS

Respondent Christian Graber ("**Mr. Graber**"), through undersigned counsel, hereby responds to Petitioner Valve Corporation's ("**Valve**") Petition to Vacate Arbitration Awards. Dkt. 1.

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

TABLE OF CONTENTS

I. Introduction ................................................................................................ 3

II. Facts ......................................................................................................... 3

III. Legal Standard ........................................................................................ 7

IV. Argument ................................................................................................ 7

    A. Valve Accepted Arbitral Jurisdiction ............................................... 7

    B. Valve's One-sided Amendment Does Not Affect the Awards ......................... 8

        1. Valve's Participation Bars This Subsequent Challenge ............................... 8

        2. Valve's Contract Update Does Not Oust Arbitral Jurisdiction ................... 9

        3. Unconscionable in Formation and in Substance, the Update Is Void or Severable ...................................................................................... 13

        4. Equity Precludes Valve's Attempt to Escape Arbitration ......................... 16

        5. Valve Relies on Straw Men, Not Binding Precedent ................................. 22

    C. Valve Wasn't Denied Due Process ..................................................... 27

    D. The Award Was Rational, Not Arbitrary ........................................... 30

    E. No Conflict Existed Between the Arbitrator and the Parties ...................... 32

V. Conclusion .............................................................................................. 34

RESPONDENT CHRISTIAN GRABER'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARDS – Page 2

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

# I. INTRODUCTION

This vacatur motion is just the latest in a long line of attempts by Valve Corporation—a proven monopolist with the highest profits per employee in the world—to evade accountability for its illegal conduct that costs users billions a year. By successfully compelling arbitration, Valve avoided a class action over its antitrust claims including Mr. Graber as a class member. Mr. Graber arbitrated his claim as Valve demanded and as ordered by this court. Mr. Graber won. This court should reject Valve's attempts to overturn its loss in the forum it demanded (which attempt Valve makes while *simultaneously* moving to confirm arbitrations that it won).

# II. FACTS

Valve's Steam distributes PC games, which consumers are allegedly able to keep and play perpetually. Although users have accounts and Valve labels them as "subscribers," purchases are made in one-time payments for games. This process is like iTunes—pay once per song; not like Spotify—pay monthly for the whole library. User's who delete or lose their account lose their purchased games. As was the case with Mr. Graber, these games often constitute thousands of dollars in purchases. Valve is monopolist in this market.

Valve "violated Sections 1 and 2 of the Sherman Act." Dkt. 3-8 at 3–4. Mr. Graber "paid inflated prices for PC game purchased on Steam as a result of the impact on the market as a whole of Steam's anticompetitive conduct." *Id.* After a trial in which Arbitrator Goins heard from six Valve employee witnesses, the

RESPONDENT CHRISTIAN GRABER'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARDS – Page 3

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

tribunal found those "witnesses uniformly present what appeared to be rehearsed explanations for the company's conduct that were at odds with the anticompetitive goals and effects expressed in their written communications." *Id.*

The Court is aware—and it is undisputed—that Mr. Graber's antitrust claims were subject to arbitration under a pre-2024 version of Steam Subscriber Agreement ("SSA"). *See* Dkt. 2-1; *Wolfire Games, LLC v. Valve Corp.*, No. 2:21-cv-00563-JCC, 2021 WL 4952220 (W.D. Wash. Oct. 25, 2021).

In October 2023, Mr. Graber filed his demand for arbitration. *See* Dkt. 3-1. In that demand, he explained that he was proceeding pursuant to this Court's order in *Wolfire* and that he was in arbitration "at Valve's insistence." *Id.* at 4 n.4. Valve filed its Answer, Affirmative Defenses, and first Motion to Dismiss on December 26, 2023. Exhibit 1 (hereinafter, "1st MTD"); Dkt. 3-6 at 3. In it's Motion to Dismiss, Valve conceded "the dispute resolution clause in the Steam Subscriber Agreement ("SSA") [] governs claimants' relationship with Valve." 1st MTD at 2. Valve went on to state "When subscribers agree to the SSA, they and Valve agree to submit disputes to individual arbitration." *Id.* at 4.

Throughout the arbitration, Valve then "engaged in conduct primarily for the purpose of delaying the litigation or increasing the cost thereof." Dkt. 3-9 at 4. This included "reversing its position as to the appropriate forum for resolution of this case, attempting to unilaterally amend the underlying arbitration agreement after this proceeding had been pending many months, and filing multiple motions to dismiss." *Id.*

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Valve's 1st MTD claimed "Bucher has no interest in arbitrating all of these claims on behalf of its clients," "Bucher is not vigorously representing or vindicating its clients' interests," "Bucher misleadingly overstates the merits of the antitrust theory," and "Bucher's demands are frivolous." 1st MTD at 8, 12, 28. Valve's 1st MTD was unsuccessful—and its assertions now undeniably inaccurate.

As late as September 10, 2024 Valve argued in a second motion to dismiss in Mr. Graber's arbitration that "The SSA governs Valve's relationships with Claimants and is enforceable." Exhibit 2 ("2nd MTD"), at 16.

But two weeks after telling Arbitrator Goins the arbitration clause was still enforceable, on September 26, 2024, Valve unilaterally amended the SSA (the "2024 amendment"). *See* Dkt. 1 ¶ 10.[1]

Valve's sudden and unilateral 2024 amendment introduced a new forum-selection clause. Valve describes it as providing "for resolution of disputes in court, including pending disputes." Dkt. 1, ¶ 10. The clause reads:

> You and Valve agree that all disputes and claims between you and Valve (including any dispute or claim that arose before the existence of this or any prior agreement) shall be commenced and maintained exclusively in any state or federal court located in King County, Washington, having subject matter jurisdiction.

Dkt. 2-2, § 10

---

[1] The SSA authorizes two forms of amendment: mutual and unilateral. *See* Dkt. 2-1 § 8. Mutual amendments require "explicit consent to changes proposed by Valve." *Id*. § 8.A. Unilateral amendments are allowed only if Valve follows specific procedural formalities. *Id*. § 8.B. Valve did not follow these procedural formalities.

RESPONDENT CHRISTIAN GRABER'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARDS – Page 5

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Relying on that language, Valve objected to Arbitrator Goins's jurisdiction via what was now a *third* motion to dismiss (hereinafter, "3rd MTD"). *See* Dkt. 3-6 (order denying 3rd MTD). Arbitrator Goins rejected this objection both as untimely and on the merits. As she held, under AAA Consumer R-14(c), Valve was required to object by December 26, 2023—the date it filed its answer and affirmative defenses. Having chosen to litigate on the merits instead, Valve forfeited any later jurisdictional challenge. *Id*.

On May 29, 2025, Arbitrator Goins issued an interim award on liability, concluding that Valve had unlawfully used its monopoly power to manipulate prices in the relevant market. *See* Dkt. 3-8. She awarded Mr. Graber treble damages and directed him to submit a fee application. *Id*.

On September 3, 2025, Arbitrator Goins issued her final award granting fees and costs, holding that such an award is "mandatory" in a successful antitrust action. *See* Dkt. 3-9 at 2 (citing *Baughman v. Cooper-Jarrett, Inc.*, 530 F.2d 529 (3d Cir. 1976), *cert. denied*, 429 U.S. 825 (1976); 15 U.S.C. § 15(a)).

Many arbitrations are occurring in parallel. None apply the same procedures—for example, Valve prevailed in arbitrations before Arbitrator Saydah who refused to enforce subpoenas for Valve's employees, resulting in a hearing with limit testimony on Valve's monopoly. Thus, on February 24, July 24, and September 24, 2025, Valve filed numerous petitions in Washington state court to confirm the awards which it *won,* while simultaneously dismissing those Respondents from its complaint before this Court, in which it had previously sought to *enjoin* those

RESPONDENT CHRISTIAN GRABER'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARDS – Page 6

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Respondents' arbitrations. *See Valve v. Abruzze,* 2:24-cv-1717-JNW (W.D. Wash), Dkts. 54, 75, 98.

### III. LEGAL STANDARD

Under Section 9 of the Federal Arbitration Act, the Court must confirm an arbitration award unless it is vacated, modified, or corrected as prescribed in §§ 10 or 11. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). The statute's command is mandatory: confirmation follows unless Congress has said otherwise. Judicial review of an arbitration award is "limited and highly deferential." *Haines v. Amazon.com Servs.*, 766 F. Supp. 3d 1120, 1124 (W.D. Wash. 2025). Legal or factual mistakes alone do not justify setting an award aside. *Id*. The party opposing confirmation bears the burden of proof. *ShaZor Logistics, LLC v. Amazon.com*, No. 24-CV-968-BJR, 2024 WL 4827533, at *3 (W.D. Wash. Nov. 19, 2024).

### IV. ARGUMENT

#### A.    Valve Accepted Arbitral Jurisdiction

On October 25, 2021, on Valve's motion, *this Court* ruled that any challenges to the arbitration clause *must* be decided by the arbitrator consistent with the SSA's delegation clause. *See Wolfire*, 2021 WL 4952220, at *2. "AAA rules give an arbitrator 'the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.'" *Id*. (citing *Oracle Am., Inc. v. Myriad Group A.G.,* 724 F.3d 1069, 1074 n.1 (9th Cir. 2013))

RESPONDENT CHRISTIAN GRABER'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARDS – Page 7

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

The parties proceeded to arbitration, and Valve submitted an arbitrability challenge to Arbitrator Goins, consistent with the above order. *See* 1st MTD; Dkt. 3-6. Here, Arbitrator Goins rejected Valve's challenge to her jurisdiction based on the SSA and 2024 amendment. *Id.* Valve offers no argument—let alone authority—to contest that jurisdictional ruling. The issue having *already* been decided by the arbitrator consistent with this Court's order, the Court must enforce the jurisdictional award and deny Valve's motion to vacate at the threshold.

## B.    Valve's One-sided Amendment Does Not Affect the Awards

Jurisdiction, once vested in the arbitrator, cannot be unmade by regret. A party that compels arbitration, consents to its authority, and litigates it cannot later rewrite the forum clause to escape an adverse result. Valve's midstream amendment violates the implied duty of good faith and fair dealing, lacks the explicit consent its contract demands, and is both procedurally and substantively unconscionable. Equity and precedent align on the same rule: having chosen arbitration, participated fully, and lost, Valve cannot now revoke the jurisdiction of the arbitrator to whom it consented.

### 1.    Valve's Participation Bars This Subsequent Challenge

The Ninth Circuit has long made the point plainly: a party may not voluntarily submit to arbitration and then challenge the authority of the arbitrators to act. *Ficek v. S. Pac. Co.*, 338 F.2d 655, 657 (9th Cir. 1964). In *Fortune, Alsweet & Eldridge v. Daniel*, 724 F.2d 1355, 1357 (9th Cir. 1983), the court likewise held that it would be "unreasonable and unjust to allow [a party] to challenge the legitimacy

RESPONDENT CHRISTIAN GRABER'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARDS – Page 8

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

of the arbitration process, in which [it] had voluntarily participated over a period of several months, shortly before the arbitrator announced her decision." This long precluded tactic is exactly what Valve attempts here. Were it permissible, Valve would be allowed to confirm the awards it favors and vacate those it disfavors—a "heads I win, tails you lose" gambit the Ninth Circuit has squarely rejected. *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016). The Court should therefore reject Valve's petition outright as the very form of gamesmanship the FAA does not tolerate.

### 2.    Valve's Contract Update Does Not Oust Arbitral Jurisdiction

The SSA permits amendment in only two ways—by mutual agreement or by unilateral modification by Valve. Dkt. 2-1, § 8. Neither path leads where Valve hopes to go. Courts have repeatedly held that unilateral attempts to change the forum constitute bad-faith conduct. *See, e.g., Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960 (2015) (holding that retroactive application of an arbitration clause to claims filed in court violated the implied covenant of good faith and fair dealing). Valve also constrained itself by requiring that any mutual amendment rest on "explicit consent"—a term courts interpret to mean consent free of ambiguity. *In re Facebook, Inc., Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d 767, 794 (N.D. Cal. 2019).

#### a.    A Unilateral Update to End Arbitration Breaches the Covenant of Good Faith and Fair Dealing

Any argument that Valve successfully amended the contract unilaterally fails under settled law. In *Cobb*, the defendant claimed that its right to amend the

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

bylaws allowed it to impose arbitration retroactively on claims already filed in court. Both the trial and appellate courts rejected that theory. *Cobb*, 233 Cal. App. 4th at 964, 969. They held that applying a new arbitration clause to a pending case exceeded the defendant's amendment authority and violated the implied covenant of good faith and fair dealing. *Id.* The rule is straightforward: a party may not rewrite its contract midstream to interfere with the other side's vested right to its chosen forum.

Arbitrator Goins applied the same reasoning in rejecting Valve's argument. Dkt. 3-6. The facts differ only in direction. In *Cobb*, the defendant tried to add arbitration after court litigation began; here, Valve attempted to remove arbitration after arbitration had begun. The principle is identical: the covenant of good faith forbids a party from manipulating contract terms to gain a procedural advantage in an ongoing dispute. As the arbitrator found, Valve's unilateral effort to apply the update to pending proceedings would deny claimants the benefit of their existing arbitration agreement and exceed Valve's contractual authority. Dkt. 3-6.

Washington law reaches the same conclusion. Every contract in this State carries an implied duty of good faith and fair dealing in performance and enforcement. *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569 (1991).[2] That duty requires each party to act so the other receives the full benefit of the bargain.

---

[2] Although it is unclear what state contract law governs the parties' SSA, for the purposes of this response Mr. Graber argues the issues under Washington law. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (federal courts apply state contract law when reviewing arbitration provisions).

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

*Betchard-Clayton, Inc. v. King*, 41 Wn. App. 887, 890 (1985), *review denied*, 104 Wn.2d 1027 (1985). It does not compel any party to accept a material change in contract terms. As the Washington Supreme Court explained, good faith demands fidelity to the spirit of the contract and forbids conduct that undermines the other party's reasonable expectations. *Metro. Park Dist. v. Griffith*, 106 Wn.2d 425, 437 (1986). Valve's attempt to rewrite the rules after the game began violates those principles and fails as a matter of law.

### b.    Explicit Consent Means Unequivocal Amendments

The SSA permits amendment only "by [Mr. Graber's] explicit consent to changes proposed by Valve." Dkt. 2-1, § 8.A. Although undefined, the term "explicit consent" has a precise legal meaning: consent that is express, clear, and unmistakable. *See EXPLICIT*, Black's Law Dictionary (12th ed. 2024) ("Expressed without ambiguity or vagueness; leaving no doubt."); *EXPRESS CONSENT*, Black's Law Dictionary (12th ed. 2024) ("Consent that is clearly and unmistakably stated."). "Explicit consent" means more than a click-through agreement pushed to millions of users containing vague and ambiguous terms, as Valve did here.

Courts in this circuit agree that such language requires more. They have interpreted "explicit consent" with rigor. In *Rosenow v. Facebook, Inc.*, No. 19-CV-1297-WQH-MMP, 2025 WL 951277 (S.D. Cal. Mar. 28, 2025), and *In re Facebook*, 402 F. Supp. 3d at 794, the courts held that actual consent—explicit or implied—requires clear notice and sufficient detail to inform the user exactly what

RESPONDENT CHRISTIAN GRABER'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARDS – Page 11

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

they are agreeing to. In other words, the terms must be "clear and unequivocal." *Rosenow*, 2025 WL 951277, at *14.

Against this backdrop, Valve offers no evidence that Mr. Graber explicitly agreed to its new terms or that he understood them to extinguish an arbitration already underway. To the contrary, the record clearly establishes the opposite: Mr. Graber continued using his Steam account and prosecuting his arbitration claims. At most, Valve's argument based solely on the existence of the updated SSA itself, which it pushed to millions of users with general language, falls short of the explicit consent its own contract demands.

The lack of explicit consent is stark against the backdrop of Valve's unethical choice to even make this offer to Mr. Graber directly, rather than through counsel. When a party is known to be represented in a proceeding, communications go through counsel. Yet Valve purports to have tendered to Mr. Graber directly a click-wrap form that upended his currently pending arbitration that resulted in a substantial award in his favor. Not only was Valve's "consent' not explicit, it was certainly not explicit in the context of a litigation where decisions and offers are expected by a client to go through counsel. Mr. Graber had no reason to think his rights in arbitration were going to be affected by the notice presented to him, because he had the expectation all clients have that settlement and other legal offers will be conveyed through counsel.

A party that drafts a high bar for amendment must live by it—and propose clear and unequivocal language stating that acceptance of the amendment means

RESPONDENT CHRISTIAN GRABER'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARDS – Page 12

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

withdrawing specific arbitration claims at issue. *Rosenow*, 2025 WL 951277, at *14. Valve's failure to secure that consent means the 2024 amendment, by the very terms of its own contract, is ineffective and cannot disturb the arbitrator's jurisdiction or the final award.

### 3. Unconscionable in Formation and in Substance, the Update Is Void or Severable

Even if the Court were to find that Mr. Graber somehow gave explicit consent to Valve's purported amendment, the new agreement cannot be enforced because it is both procedurally and substantively unconscionable. Washington recognizes two types of unconscionability for invalidating forum selection clauses: procedural and substantive. *McKee v. AT&T Corp.*, 164 Wn.2d 372, 396, 191 P.3d 845 (2008). Procedural unconscionability applies to impropriety during contract formation, while substantive unconscionability applies where a term is one-sided or overly harsh. *Nelson v. McGoldrick*, 127 Wn.2d 124, 131, 896 P.2d 1258 (1995). Either is sufficient to void an agreement. *Hill v. Garda CL Nw., Inc.*, 179 Wn.2d 47, 55, 308 P.3d 635 (2013). Both forms are present here.

### a. Valve's "Cancel-or-Lose-Everything" Tactics Show Procedural Unconscionability

Washington courts determine procedural unconscionability by examining the circumstances of formation—how the agreement was entered, whether the weaker party had a reasonable opportunity to understand its terms, and whether important terms were hidden in fine print or otherwise obscured. *Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 54–55 (2020) (citing *Nelson*, 127 Wn.2d at 131;

RESPONDENT CHRISTIAN GRABER'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARDS – Page 13

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

*Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 304 (2004)). A contract is procedurally unconscionable when a party with unequal bargaining power lacks a meaningful opportunity to review or negotiate the terms, rendering the result an adhesion contract. *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 348 (2004).

Here, Mr. Graber—like the employee in *Burnett*—had no real choice or chance to review the terms before being bound. Valve's update was a non-negotiable clickwrap that demanded assent simply to keep using content he had already bought. Worse, Valve concealed its true intent: that Mr. Graber must abandon his ongoing arbitration of antitrust claims. Only weeks later, when Valve moved to dismiss the arbitration, did that intent become clear. By then, Mr. Graber had been forced into supposed acceptance of general terms covering millions of others. Had Valve genuinely wished to resolve matters ethically, it would have contacted Mr. Graber's counsel under the rules of professional conduct—not delivered a stealth withdrawal through the Steam platform. *See, e.g., Grant v. T-Mobile USA, Inc.*, No. 2:23-CV-01946-MJP, 2024 WL 3510937, at *6 (W.D. Wash. July 23, 2024) ("the Court disapproves of T-Mobile directly asking Grant to retroactively waive her right to trial in a case that had already been filed, rather than making the request through her counsel. This is a poor (if not unethical) practice and should not continue."). Valve provided Mr. Graber no meaningful choice; it was a manufactured illusion of choice.

More importantly, this case exemplifies a bait-and-switch carried out under overwhelming bargaining power. Valve, a proven monopolist, unilaterally changed

the governing contract after compelling arbitration, hiding its new objective behind ambiguous language applied to millions of users. Such conduct embodies both oppression and surprise—the hallmarks of procedural unconscionability. *Burnett*, 196 Wn.2d at 54–55. Valve wielded its dominance to rewrite the rules in its own favor, leaving Mr. Graber with no meaningful opportunity to bargain or refuse. Even if he somehow agreed to the update, that assent was extracted under conditions so one-sided and coercive that the contract is procedurally unconscionable and unenforceable.

### b.   When One Side Can Rewrite the Deal, It Stops Being a Deal

Washington law bars clauses that crush one side and favor the drafter. Substantive unconscionability tests the substance of a term—whether it is so one-sided or oppressive that equity cannot enforce it. *Burnett.*, 196 Wn.2d at 55; *Gandee v. LDL Freedom Enters.*, 176 Wn.2d 598, 603 (2013); *Tadych v. Noble Ridge Constr., Inc.*, 200 Wn.2d 635, 645–46, 519 P.3d 199 (2022); *Adler*, 153 Wn.2d at 344. It exists when a provision is so one-sided, harsh, or "monstrously calloused" that it shocks the conscience and confers unjustified advantage on the stronger party. *Adler*, 153 Wn.2d at 344–45; *Nelson*, 127 Wn.2d at 131. In *Burnett*, the Washington Supreme Court condemned an arbitration policy that forced employees through a multi-step internal procedure controlled entirely by the employer, calling it "so one-sided and harsh that it is substantively unconscionable." *Burnett*, 196 Wn.2d at 55 (quoting *Zuver*, 153 Wn.2d at 318). The doctrine guards against contractual schemes that, by design, let one party win by self-interested rules instead of merit.

RESPONDENT CHRISTIAN GRABER'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARDS – Page 15

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Valve's 2024 amendment fits that mold. It was imposed unilaterally, after litigation had begun, on a take-it-or-lose-everything basis. The new forum-selection clause demands that Mr. Graber discard months of victorious effort, hundreds of thousands of dollars in awarded costs and fees, and refile his claims in federal court where he would have to roll the dice and hope to win his case again. It offers him nothing in return. The benefit runs one way—exclusively to Valve. That imbalance is not accident but design, the same kind of self-serving mechanism *Burnett* condemned: a two-step process that guarantees the drafter the upper hand. Mr. Graber had no voice, no real choice, and no way to keep what he had paid for without surrendering his right to arbitration. Washington courts have a name for that kind of maneuver—substantive unconscionability.

Washington courts have long condemned such tactics, where the stronger party rigs the process to run out the clock. *See Tadych*, 200 Wn.2d at 641; *Gandee*, 176 Wn.2d at 603; *Adler*, 153 Wn.2d at 344. In substance, Valve changed the rules mid-game to make sure only it could win. This act violates the protection of substantive unconscionability

### 4.    Equity Precludes Valve's Attempt to Escape Arbitration

Valve seeks to undo the very arbitration it compelled, consented to, and contested. Equity forbids a second bite born of regret. Waiver, equitable estoppel, and judicial estoppel all say the same thing: a party cannot handpick its forum, enjoy its efficiency and informality, and then disown it once unfavorable decisions start coming in. The law locks Valve into the results of the forum it selected.

RESPONDENT CHRISTIAN GRABER'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARDS – Page 16

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

### a.    Valve Chose the Forum, and Now Objects to It: Waiver Ensures the Law Doesn't Work That Way

When consumers brought antitrust claims in federal court, Valve intentionally chose the arbitral forum. It requested that every issue, including arbitrability, be decided there—and consented to the arbitrator's jurisdiction over Mr. Graber's claims. *Wolfire*, 2021 WL 4952220. It cannot now reverse course and ask this Court to vacate the very award it sought in that forum.

In *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022), the Supreme Court rejected arbitration-specific rules requiring prejudice to find waiver. Waiver follows ordinary contract principles, not arbitration policy. Absent prejudice, waiver turns on two elements: knowledge of the right and inconsistent conduct. *Martin*, 829 F.3d at 1124. Valve satisfies both. There is no dispute Valve knew its rights—it could have defended all antitrust claims in federal court in 2021 or objected to the arbitrator's jurisdiction by the arbitral deadline. It did neither. Instead, it compelled arbitration, participated fully, and now seeks to vacate the arbitrator's award.

That course of conduct is textbook waiver—knowledge of a right followed by deliberate inconsistency. Having fully invoked and benefitted from the efficiency and informality of the arbitral process, Valve cannot now claim that the forum it chose lacked authority to decide Mr. Graber's claims. *Morgan* and *Martin* foreclose that maneuver. Accordingly, the Court should conclude that Valve waived any right to challenge the arbitrator's jurisdiction to issue the final award.

RESPONDENT CHRISTIAN GRABER'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARDS – Page 17

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

### b.    Equitable Estoppel Prevents Valve from Renouncing the Arbitration It Demanded

Equitable estoppel prevents a party from inducing reliance on one position only to abandon it when the outcome turns unfavorable. *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042 (9th Cir. 2009). The Ninth Circuit applies state-law estoppel principles in arbitration cases. *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009)); *accord Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013). Washington law follows the same rule: a party that adopts a position, induces reliance, and later reverses course to the other's detriment is estopped. *Saunders v. Lloyd's of London*, 113 Wn.2d 330, 336, 779 P.2d 249 (1989). Valve meets every element.

Valve first took the position that arbitration was the proper forum. It moved to compel arbitration of the antitrust claims, invoking the same forum-selection clause that Mr. Graber followed in filing his dispute. It told the Court—and the arbitrator—that all issues, including arbitrability, belonged before the arbitrator. Valve's position could not have been clearer. *See* 1st MTD ("the dispute resolution clause in the Steam Subscriber Agreement ("SSA") [] governs claimants' relationship with Valve") ("When subscribers agree to the SSA, they and Valve agree to submit disputes to individual arbitration."); 2nd MTD ("The SSA governs Valve's relationships with Claimants and is enforceable.")

Mr. Graber relied on that position. He pursued arbitration under the SSA valve compelled arbitration under, paid his filing fees, incurred $46,526.07 in costs and hundreds of thousands in attorneys' fees, and litigated through to final award

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

in his favor. Valve likewise participated fully—filing briefs, attending hearings, and consenting to the arbitrator's jurisdiction. That Mr. Graber's reliance was not only foreseeable; it was the direct result of Valve's own actions.

Now Valve reverses course. It claims that the amended version of its agreement—issued while arbitration was ongoing—retroactively stripped the arbitrator of authority. That maneuver would erase the process Valve demanded and nullify the result it lost. Washington law does not tolerate such gamesmanship. *Saunders*, 113 Wn.2d at 336.

Equitable estoppel bars precisely this kind of bait-and-switch. Having led Mr. Graber into arbitration and consented to litigate there, Valve cannot now disclaim the forum it selected merely because the result displeases it. The doctrine holds fast: equitable estoppel locks Valve to the position it embraced and prevents it from vacating the award issued through the very process it compelled.

### c.    Judicial Estoppel Precludes Valve from Reversing Its Prior Litigation Position

Judicial estoppel is the law's way of saying enough is enough. It prevents a party from shifting positions to suit the moment—a principle the Supreme Court described as essential to protecting the integrity of the judicial process. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (judicial estoppel "prohibit[s] parties from deliberately changing positions according to the exigencies of the moment"). The doctrine is rooted in equity and applies with particular force when a litigant seeks to profit from inconsistent representations made to different tribunals. *Id*. Washington law is no different: a party cannot treat a contract as a nullity in one

RESPONDENT CHRISTIAN GRABER'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARDS – Page 19

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

case and enforce it in another. *Hardgrove v. Bowman*, 10 Wn.2d 136, 138, 116 P.2d 336, 337 (1941).

"A court may properly apply judicial estoppel when the following elements are shown: (1) a party asserts a position that is 'clearly inconsistent' with an earlier position; (2) judicial acceptance of the inconsistent position would indicate that either the first or second court was misled; and (3) 'the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party.'" *Baldwin v. Silver*, 147 Wn. App. 531, 535, 196 P.3d 170, 172 (2008) (citing *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538–39, 160 P.3d 13 (2007)). All three elements are met here.

Valve has repeatedly taken the position both that the pre-2024 SSA was enforceable and that issues of arbitrability are to be decided by the arbitrator. Valve took that position before this court. *Wolfire*, 2021 WL 4952220. Valve took that position in front of the arbitrators. 1ˢᵗ MTD; 2ⁿᵈ MTD. Valve took that position in front of Washington state courts in confirming the awards of individuals who abirritations were awarded *after* the 2024 amendment. Dkts. 54, 75, 98.

If Valve is correct that its unilateral term change means awards under the pre-2024 agreements must be vacated, then Valve necessarily mislead the Washington state court when it claimed post-2024 term change awards should be confirmed. If Valve is correct that the issues of arbitrability actually need to be decided by this court, then it misled this court when it argued "whether this dispute falls within the scope of the SSA's arbitration agreement (the second requirement)

RESPONDENT CHRISTIAN GRABER'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARDS – Page 20

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

is a question of arbitrability delegated to the arbitrator." *Wolfire*, Dkt. 35. If Valve is correct that the pre-2024 doesn't govern, then it mislead Arbitrator Goins went it said it did. 1st MTD; 2nd MTD.

The unfair detriment on Mr. Graber is enormous. Valve suggests he must forfeit a more than $700,000 award because he litigated his claims, and Valve's belated assertion that his claim was not arbitrable, in the forum Valve has repeatedly told tribunals those disputes must be litigated in. Valve's two-faced gambit is precisely the conduct judicial prevents.

Valve's litigation tactics are a case study in gamesmanship. Across years of litigation—from *Wolfire* to *Beer v. Valve*, and hundreds of consumer arbitrations— Valve insisted that the SSA required individual arbitration and deprived courts of any power to interfere on any issue. It compelled arbitration, resisted judicial oversight, and has even confirmed arbitral awards issued under that same agreement following its purported amendment. Having secured the benefits of that position, Valve now tells the opposite story. It claims the same arbitration clause is suddenly unenforceable and that its 2024 update authorizes the Court to vacate the very arbitrations it once demanded.

Judicial estoppel exists to prevent exactly this sort of misconduct. Having convinced courts and arbitrators that disputes under the SSA must proceed in arbitration, and must be confirmed once awarded, Valve cannot now invoke its 2024 amendment to undo the ultimate result. Valve must be held to the word it gave this Court and others, or its litigation tactics will run amok. Enough is enough.

RESPONDENT CHRISTIAN GRABER'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARDS – Page 21

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

After years of insisting that arbitration was the exclusive forum under its own user agreement, including multiple times in Mr. Graber's own arbitration, Valve must now stand by that position. The Court must hold Valve to its word Judicial estoppel bars vacatur.

### 5.   Valve Relies on Straw Men, Not Binding Precedent

Valve leans on case law from across the country, but none of it fits these facts. Its lead citation—*Coinbase, Inc. v. Suski*—addressed a threshold question about which forum clause governs when two contracts conflict. The rest involve good-faith updates made before arbitration began or mutual assent reached at the outset of litigation. Not one decision supports what Valve attempts here: using a self-serving contract update to revoke the jurisdiction of an arbitrator it consented to and defended before.

### a.   *Coinbase* Has Nothing to Do with This Petition

Valve leans heavily on *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024), but that decision addressed a different question—the "first question in any arbitration dispute," as the Court put it. *Id*. at 148. Valve's petition, by contrast, presents the opposite inquiry: the last question in any arbitration dispute—whether the award should be confirmed.

In *Coinbase*, the parties executed two separate contracts—one requiring arbitration of all disputes (including arbitrability) and another designating California courts as the forum. The Supreme Court held that when multiple facially valid agreements contain competing dispute-resolution clauses, a court must first

RESPONDENT CHRISTIAN GRABER'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARDS – Page 22

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

decide which contract controls before enforcing either clause. *Id*. at 149–52. That narrow holding has no bearing here. The SSA is the only contract at issue, and it delegates all questions of arbitrability to the arbitrator. There is no competing agreement to choose between.

Valve agreed to arbitrate under that one agreement. It consented to the jurisdiction of Arbitrator Goins—who presided over the case—and proceeded to defend itself in that forum for years. And Valve *compelled* arbitration under that agreement. Having invoked arbitration, participated fully, and lost, Valve now tries to recast *Coinbase* as a lifeline. But *Coinbase* has no application to these facts, and Valve has never provided a valid argument to the contrary. It plucks one line from *Coinbase* regarding whether parties agreed to arbitrate and acts as though that isolated phrase requires this Court to ignore every other principle of law to the contrary. That is not how the law works.

The Eighth Circuit's decision in *Lackie Drug Store, Inc. v. OptumRx, Inc.*, 143 F.4th 985, 998–99 (8th Cir. 2025), confirms the point. There, the court rejected an identical attempt to stretch *Coinbase* beyond its facts, explaining that *Coinbase* applies only when "parties have executed two contracts" with conflicting arbitration provisions. *Id*. Where, as here, there is just one contract containing a valid delegation clause, courts must send all issues to arbitration. *See Wolfire*.

Arbitrator Goins recognized as much. In the arbitration, she rejected Valve's reliance on *Coinbase* as both misplaced and untimely under AAA Rule R-14. Dkt. 3-6. Valve's current position is simply a repackaged version of the same argument she

RESPONDENT CHRISTIAN GRABER'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARDS – Page 23

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

already denied and functions as an impermissible direct appeal from that ruling. That is exactly what the Ninth Circuit forbids: "a party may not submit a claim to arbitration and then challenge the authority of the arbitrator to act after receiving an unfavorable result." *Fortune*, 724 F.2d at 1357 (citing *Ficek*, 338 F.2d at 655).

Even if *Coinbase* were read to require a court to decide whether to compel arbitration in this situation, that is what this court did. *Wolfire*, 2021 WL 4952220. Valve's argument is not only that *Coinbase* means this court must decide whether arbitration is appropriate, but that it must *decide again*. That Valve attempted to change its agreement to reverse its prior success does not entitle it to re-review of the legal question of delegation. To read *Coinbase* to mandate repeated court review following a successful motion to compel would invite *ad nauseum* litigation and deprive an order compelling arbitration any semblance of finality.

In short, *Coinbase* concerned two contracts competing for control. This case involves one contract Valve drafted, invoked, consented to, and lost under. The law does not allow Valve to transform *Coinbase* into an escape hatch from its own contract.

### b.    Valve's Out-of-Forum Cases Don't Bind and Don't Persuade

Valve leans on federal cases from across the country—not Washington—to argue that Mr. Graber's award should be vacated based on its bad-faith update. Dkt. 1 ¶ 8; *id.* at 6 n.4. But those authorities highlight why Valve's position fails.

Start with *Bozek v. PNC Bank*, 2020 WL 6581491 (E.D. Pa. Nov. 10, 2020), *aff'd* 2021 WL 4240359 (3d Cir. Sept. 17, 2021). Valve quotes *Bozek* for the

RESPONDENT CHRISTIAN GRABER'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARDS – Page 24

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

proposition that "an arbitrator exceeds her powers by issuing an award when the parties have no agreement to arbitrate." Dkt. 1 ¶ 8. But *Bozek* involved nothing like this case. It arose from a supposed arbitration launched in secret, before a panel of the claimant's acquaintances, under a one-sided contract of adhesion the other party never saw—and accompanied, as the court put it, by "pages of unintelligible legal jargon." *Id*. at 1, 3–5. The court rightly vacated that sham proceeding.

*Bozek* thus stands for the unremarkable principle that no one can be bound by an arbitration they neither agreed to nor participated in. Valve, by contrast, drafted the agreement, invoked it, and compelled arbitration. There was nothing clandestine about these proceedings—only an unfavorable result Valve now seeks to erase through similar obscure and unclear legal jargon.

*Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir. 2014), fares no better. Applying North Carolina law, the Eleventh Circuit held that when parties clearly express their intent to supersede a prior contract, the prior arbitration clause is displaced. *Id*. at 1123. Washington has no comparable rule. Timing also distinguishes *Dasher*: by the time the bank moved to compel arbitration, the prior agreement had already been terminated. *Id*. at 1126–27. Here, arbitration was compelled while Valve's clause remained in full force. Valve invoked that clause— and must live with it. Dasher offers no refuge.

*Pilon v. Discovery Commc'n's, LLC* proves the same point. 769 F. Supp. 3d 273, 286 (S.D.N.Y. 2025). There, the court applied different state laws to two contracts—California law to the first, New York law to the second—and compelled

RESPONDENT CHRISTIAN GRABER'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARDS – Page 25

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

arbitration under whichever contract each party accepted. *Id.* at 286–90, 294–98. Pilon turned on choice of law and mutual assent, not on any effort to enjoin an ongoing arbitration or divert it into court. It bears no resemblance to this case.

Valve next cites *Laster v. T-Mobile USA, Inc.*, No. 05CV1167DMS AJB, 2008 WL 5216255 (S.D. Cal. Aug. 11, 2008), *aff'd sub nom. Laster v. AT & T Mobility LLC*, 584 F.3d 849 (9th Cir. 2009), *rev'd sub nom. AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), *and amended in part*, No. 05CV1167 DMS WVG, 2012 WL 1681762 (S.D. Cal. May 9, 2012). Whatever vitality *Laster* once had vanished after *Concepcion*. In any event, *Laster* involved a good-faith update issued before arbitration began—not, as here, a bad-faith maneuver to oust an arbitrator's jurisdiction midstream.

*Enderlin v. XM Satellite Radio Holdings, Inc.,* No. 4:06-CV-0032 GTE, 2008 WL 830262 (E.D. Ark. Mar. 25, 2008), stands for the same narrow point: a party is bound to a good-faith update to an existing arbitration agreement. Valve's bad faith takes it outside even that limited rule. [3]

Finally, *McCumbee v. M Pizza, Inc.*, 2023 WL 2725991, (N.D. W. Va. Mar. 30, 2023), involved mutual assent reached within weeks of initiating litigation. There, most employees had already signed arbitration agreements; when the company discovered a few had not, it promptly obtained their consent, including

---

[3] Valve's reliance on *Goetsch v. Shell Oil Co.*, 197 F.R.D. 574, 577 (W.D.N.C. 2000) fails for the same reason that the agreement was amended by a good faith update to alter the rules of the arbitration.

RESPONDENT CHRISTIAN GRABER'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARDS – Page 26

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

plaintiff. *Id.* at 4–5, 14. *McCumbee* thus dealt with mutual assent achieved at the outset—not an eleventh-hour attempt to vacate an award after losing in arbitration it compelled.

All these cases share the same fatal flaws. They arose under different law, turned on mutual assent in the absence of bad faith, and never contemplated the kind of midstream reversal or post-loss vacatur Valve seeks here. None endorses revoking an arbitration clause after compelling its enforcement—or undoing a final award from the very forum Valve chose. Law and fairness alike lock Valve into the consequences of its own bargain.

## C.    Valve Wasn't Denied Due Process

Petitioner next invokes Section 10(a)(3) of the FAA, which permits vacatur where an arbitrator "refuse[s] to hear evidence pertinent and material to the controversy" or otherwise engages in "misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). But there is no allegation that the arbitrator refused to hear evidence. When Valve complained that Mr. Graber's fee submission was supported by an affidavit with a tally of hours for each attorney rather than the individual time entries, Valve asked the arbitrator to order them produced. The arbitrator did so. But because of privilege concerns, Arbitrator Goins ordered the timesheets be produced *in camera*. Valve now complains that because the arbitrator granted its requested, and reviewed backup documentation Mr. Graber's cost application, but did so *in camera*, the award must be vacated. Dkt. 99 at 6–9.

RESPONDENT CHRISTIAN GRABER'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARDS – Page 27

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Valve cites no authority holding that this practice is improper. It relies instead on a patchwork of cases taken out of context to construct a strained argument. The law is clear: an arbitrator's procedural choices are not governed by the Federal Rules of Civil Procedure or Evidence. The Ninth Circuit has "repeatedly held that arbitration is not governed by the federal courts' strict procedural and evidentiary requirements," and courts must be "mindful not to impose" those requirements on arbitration proceedings. *Astronics Elec. Sys. Corp. v. MAGicALL, Inc.*, No. 22-35645, 2023 WL 3451682, at *1 (9th Cir. May 15, 2023) (quoting *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010)).

The cases Valve invokes do not say otherwise. In *Move, Inc. v. Citigroup Global Markets, Inc.*, 840 F.3d 1152 (9th Cir. 2016), the issue was whether an award should be vacated after it was revealed that the tribunal's chairperson was a conman impersonating a retired lawyer. Its mention of *ex parte* evidence is dicta, drawn from *Totem Marine Tug & Barge, Inc. v. N. Am. Towing, Inc.*, 607 F.2d 649 (5th Cir. 1979), a 50-year-old case involving a gross due-process violation. There, an arbitrator telephoned one party's counsel to obtain a damages figure and used that figure in the award—without notice to or input from the opposing side. *Id.* at 650. That conduct bears no resemblance to what happened here.

Valve's claim of an "*ex parte*" proceeding here reduces to the arbitrator's *in camera* review of privileged cost records Valve demanded be submitted. Dkt. 99 at 8. There were no undisclosed communications between the arbitrator and counsel—

RESPONDENT CHRISTIAN GRABER'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARDS – Page 28

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

no off-record exchanges, no secret adoption of a party's position. The arbitrator merely reviewed confidential materials to verify a cost submission.

Valve's reliance on *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536 (9th Cir. 2016), is equally misplaced. Yamada concerned judicial fee awards in federal class actions, not arbitration. Valve identifies no authority extending that standard to arbitrations, and for good reason. Arbitration is intentionally flexible, unencumbered by "the federal courts' strict procedural and evidentiary requirements." *Astronics*, 2023 WL 3451682, at *1. Even if Yamada applied, the result would be the same: that case recognizes that a court—or here, an arbitrator— may rely on summary information rather than time sheets so long as the opposing party has a fair opportunity to respond. *Yamada*, 825 F.3d at 544 n.7. Respondent did exactly that.

Valve also misreads Rule R-32(b) of the AAA Consumer Arbitration Rules. Nothing in that rule forbids an arbitrator from reviewing evidence in camera. It provides only that "[a]ll evidence shall be taken in the presence of the arbitrator and all of the parties unless any of the parties is absent, in default, or has waived the right to be present." That provision addresses live testimony, not documentary submissions. The relevant portion—R-32(c)—instead directs arbitrators to "consider applicable principles of legal privilege," which is precisely what the arbitrator did by protecting counsel's privileged timekeeping records.

Even if Valve could show some technical misstep, that would not warrant vacatur. The Ninth Circuit holds that vacatur is proper under Section 10(a)(3) only

RESPONDENT CHRISTIAN GRABER'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARDS – Page 29

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

when an arbitrator's conduct deprives a party of a "fair hearing." *Riley v. QuantumScape Corp.*, No. 23-15277, 2024 WL 885034, at *2 (9th Cir. Mar. 1, 2024) (quoting *U.S. Life Ins.*, 591 F.3d at 1177). A fair hearing requires notice, an opportunity to be heard and to present relevant evidence, and an impartial decisionmaker. *Id.* Valve had all three. It received notice, participated fully, presented evidence, and was heard throughout. That is the essence of due process—and it is exactly what it received.

**D.   The Award Was Rational, Not Arbitrary**

Valve claims the arbitrator's award was irrational and arbitrary, warranting vacatur under § 10(a)(4) of the FAA. The Ninth Circuit has made clear that § 10(a)(4) sets a high bar—it is not enough to show that the arbitrator erred, or even seriously erred. *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 641 (9th Cir. 2010) (citing *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)). Vacatur is proper only if the award is "completely irrational" or shows a "manifest disregard for the law." *ShaZor Logistics,* 2024 WL 4827533, at *3 (quoting *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997–98 (9th Cir. 2003)).

Valve has not come close to meeting that standard; the award is reasoned, cites controlling law, and rests on ample evidence.

Valve's only arguably relevant citation is *Briscoe Protective, LLC v. N. Fork Surgery Ctr., LLC*, 215 A.D.3d 956, 957–58, 188 N.Y.S.3d 113 (2023). There, a New York appellate court vacated an award after finding that the arbitrator granted

attorneys' fees without any proof of hours worked or hourly rates—awarding fifty percent of the damages as fees with no record support. *Id*. That decision turned on the absence of any evidence whatsoever, not a misapplication of law.

Here, by contrast, there is no allegation that the arbitrator failed to request or review evidence supporting the fee award. To the contrary, Mr. Graber submitted affidavit support, Valve then requested production of Mr. Graber's entry-by-entry billing records, and the arbitrator granted that request—reviewing Mr. Graber's fully disclosed fees submission and hours along with the entry-by-entry time entries *in camera* before issuing a reasoned decision. Valve cannot now complain about the very process it demanded and received.

*Briscoe Protective* also applied New York's domestic arbitration statute, N.Y. C.P.L.R. Art. 75, not the FAA. Under the FAA, the Ninth Circuit has emphasized that "neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award." *Ghayoori v. Cobra Trading, Inc.*, No. C25-0021 TSZ, 2025 WL 1519136, at *3 (W.D. Wash. May 28, 2025) (quoting *Kyocera*, 341 F.3d at 994). So even if *Briscoe Protective* were on point, it would not justify vacatur here.

At most, Valve's objections reduce to claims of legal error—which cannot sustain vacatur under § 10(a)(4). The Ninth Circuit requires far more: "the moving party must show that the arbitrator understood and correctly stated the law, but proceeded to disregard the same." *Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir.

RESPONDENT CHRISTIAN GRABER'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARDS – Page 31

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

2009) (cleaned up). Valve makes no such showing. The record reveals a careful and reasoned decision, not a disregard for law or logic.

In sum, the award was reasoned, supported, and lawful. Nothing about it was arbitrary, much less capricious.

**E.    No Conflict Existed Between the Arbitrator and the Parties**

Valve claims that the arbitrator failed to disclose conflicts of interest in violation of 9 U.S.C. § 10(a)(2). That claim fails at the threshold.

Valve asserts that the arbitrator's firm "UBG represents multiple video game developers or their affiliates who are class members adverse to Valve in a certified federal antitrust class action currently pending in this Court." Dkt. 99 at 11. Valve cites no authority suggesting that such a tenuous link creates a disclosable conflict; the cases it invokes underscore the opposite—what a real conflict looks like. In *Carnegie Cos. v. Summit Props., Inc.*, 183 Ohio App. 3d 770 (2009), the same law firm represented both sides of the same deal. In *Schmitz v. Zilveti*, 20 F.3d 1043, 1049 (9th Cir. 1994), the arbitrator's firm had previously represented one of the parties' owners. And in *HSMV Corp. v. ADI Ltd.*, 72 F. Supp. 2d 1122, 1132 (C.D. Cal. 1999), the arbitrator's firm directly represented a party's owner.

Here, there is nothing of the sort. Valve points to no evidence that the arbitrator or her firm ever represented a party adverse to Valve. Nor could it. Expecting the arbitrator to first identify every absent class member in a federal litigation against the parties before her, then search every client of her firm to see whether any might, somewhere, be passively adverse to Valve in that litigation is

not the law—and not remotely practical. The law requires disclosure of real conflicts, not imagined ones.

Absent class members, as opposed to named parties, are definitionally not even *considered* when analyzing conflicts. In *E. & J. Gallo Winery v. EnCana Energy Services, Inc.*, the defendant moved to disqualify the judge because the judge was a possible absent class member in a Nevada class action against the defendant that alleged similar facts. No. CV F 03-5412 AWI LJO, 2004 WL 7342771 (E.D. Cal. Mar. 29, 2004). The request was denied, and the judge held that any:

> "interest as I may be perceived to have in this case is predicated on the notion I may make a decision in the present case that may, in some unknown way, influence a case in which I may eventually become a member (or may opt out) of an as yet uncertified class, and from which I may or may not receive some financial benefit whose amount and nature are as yet unknown from one or more defendants who may or may not be the defendant in this case."

*Id.* at *4.

Even if a conflict existed, Valve never raised it during the arbitration. The supposed conflicting clients did not appear on Valve's list of interested persons used by arbitrators to identify conflicts. *See* Exhibit C. The purported issue was never raised with the AAA or the arbitrator. There is no evidence the arbitrator even knew that a former client was an absent class member in a federal litigation against Valve—let alone was biased by that fact.

The Ninth Circuit has long held that "the waiver doctrine applies where a party to an arbitration has [actual or] constructive knowledge of a potential conflict but fails to timely object." *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306,

RESPONDENT CHRISTIAN GRABER'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARDS – Page 33

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

1313 (9th Cir. 2004); *see also Div. 15 Tech. v. Sheet Metal Workers' Int'l Ass'n, Local 104*, No. C 10-05309 JSW, 2011 WL 13244832, at *5 (N.D. Cal. Mar. 14, 2011) (party waived objection to partiality by failing to object during arbitration). This rule serves a vital purpose: it prevents parties from pocketing objections as insurance against an adverse award and then weaponizing an arbitrator's neutrality after losing.

## V. CONCLUSION

For the above reasons, Mr. Graber respectfully requests that the Court deny Valve's petition to vacate his awards.

DATED this 14th day of October, 2025.

BAILEY DUQUETTE P.C.

By: */s William R. Burnside*
William R. Burnside, WSBA #36002
800 Fifth Ave, Suite 101-800
Seattle, Washington 98104
T: 206.353.8021
E: will@baileyduquette.com

BUCHER LAW PLLC

William Ward Bucher IV
(*pro hac vice* forthcoming)
350 Northern Blvd, STE 324-1519
Albany, NY 12204-1000
Tel. 202.997.3029
E: will@bucherlaw.com

*Attorneys for Respondent*

RESPONDENT CHRISTIAN GRABER'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARDS – Page 34

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I caused a true and correct copy of the foregoing Respondent Christian Graber's Response to Petition to Vacate Arbitration Awards served upon counsel of record herein, as follows:

Blake Marks-Dias, WSBA No. 28169
1015 Second Avenue, Floor 10 ☒ Via Electronic Service
Seattle, Washington 98104
(206) 625-8600 Phone
(206) 625-0900 Fax
E: bmarksdias@corrcronin.com

Michael W. McTigue Jr., *Admitted Pro Hac Vice*
Meredith C. Slawe, *Admitted Pro Hac Vice*
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
E: michael.mctigue@skadden.com
E: meredith.slawe@skadden.com

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Dated: October 14th, 2025 at Seattle, Washington.

*s/ William R. Burnside*
William Burnside, WSBA No. 36002

RESPONDENT CHRISTIAN GRABER'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARDS – Page 35

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869